UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DINH V. LE,

        Plaintiff,

    v.

NANCY BERRYHILL,

        Defendant.

Case No. 17-CV-06695-LHK

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 32, 39

Dinh Le ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act. Before the Court are Plaintiff's motion for summary judgment, ECF No. 32, and the Commissioner's cross-motion for summary judgment, ECF No. 39. Having considered the parties' briefs, the relevant law, and the record in this case, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

## I.    BACKGROUND

### A.  Plaintiff's Age, Educational and Vocational Background, and Claimed Disability

1

United States District Court
Northern District of California

Plaintiff was born on November 7, 1965. Administrative Record ("AR") 253. Plaintiff received his high school education in Vietnam and obtained his bachelor's degree in Electrical Engineering from the University of Washington in 1995. AR 77–78; AR 94–95. Plaintiff previously worked as an electrical engineer, and then in 1999 opened his own company doing construction work and remodeling work after he was laid off from the electrical engineering position. AR 78–79. Plaintiff worked as a handyman and a construction worker. AR 73–76. Plaintiff stated he has not worked since 2002 because of his condition. AR 280. Plaintiff alleges he is disabled due to his history of acute lymphocytic leukemia with residual sixth cranial nerve palsy and peripheral neuropathy; chronic pain syndrome with a history of low back and lumbar degenerative disc disease; and intermittent acute asthma with history of tuberculosis exposure. AR 30. Additional facts are discussed as necessary in the analysis.

**B. Procedural History**

Plaintiff filled an application for disability insurance benefits and an application supplemental security income on September 26, 2014. AR 253; AR 255. In both applications, Plaintiff alleged that he became disabled on October 1, 2010. On November 6, 2014, the Social Security Administration issued two letters, one denying Plaintiff's application for disability insurance benefits and one denying Plaintiff's application supplemental security income. AR 144–47; AR 148–51. On January 23, 2015, the Social Security Administration denied both of Plaintiff's applications upon reconsideration. AR 157–62; AR 163–68.

An Administrative Law Judge ("ALJ") held a hearing on October 5, 2015 that was continued to February 23, 2016 due to the fact that the medical expert was unable to review Plaintiff's medical records. AR 44–55; AR 56–105. Plaintiff testified at the February 23, 2016 hearing and was represented by an attorney. AR 44; AR 56–57; AR 72–92. An impartial medical expert and an impartial vocational expert also testified. AR 57. On June 29, 2016, the ALJ issued a written decision finding that Plaintiff remained capable of performing work that exists in significant numbers within the national economy, and therefore, Plaintiff is not disabled within the

2

meaning of the Social Security Act. AR 27–38. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on September 5, 2017. AR 8–13. The Appeals Council stated "[i]f you disagree with our action, you may ask for court review of the Administrative Law Judge's decision by filing a civil action." AR 9.

On November 20, 2017, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. ECF No. 1. On July 24, 2018, the Commissioner filed an answer. ECF No. 20. On August 23, 2018, the Court granted the parties' stipulation to extend the deadline to file a motion for summary judgment until September 22, 2018. ECF No. 23. The Court stated that no further extensions would be granted. *Id.* On September 21, 2018, Plaintiff again filed a stipulation and proposed order, this time seeking a forty-five-day extension of time, until November 6, 2018, to file his motion for summary judgment. ECF No. 24. Plaintiff asserted the same reasons for the extension that he had in the first stipulation. *Id.* Pursuant to the Court's August 23, 2018 Order, which stated that "[n]o further continuance will be granted," the Court denied the second stipulation on September 24, 2018. ECF No. 26. Accordingly, Plaintiff's deadline to file a motion for summary judgment remained September 22, 2018.

Plaintiff did not file a motion for summary judgment by the deadline. Thus, on September 28, 2018, the Court issued an order to show cause why the case should not be dismissed for failure to prosecute and set a deadline for a written response by October 5, 2018 as well as a hearing on October 11, 2018. ECF No. 27. Plaintiff filed his motion for summary judgment on October 4, 2018 and a written response to the order to show cause on October 5, 2018. ECF Nos. 32 ("Plaintiff Mot.") & 33. Plaintiff's attorney explained that he had failed to learn of the Court's denial of a further extension. ECF No. 33. Additionally, Plaintiff's attorney explained that he had initially requested the extension given that he is a sole practitioner and is currently managing a demanding case schedule. *Id.* Accordingly, the Court vacated its September 28, 2018 order to show cause. ECF No. 34.

The Court granted two stipulations to extend the deadline for the Commissioner's cross-

motion for summary judgment and opposition to Plaintiff's motion for summary judgment. ECF Nos. 36 & 38. On December 19, 2018, the Commissioner filed a cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment. ECF No. 39 ("Commissioner Mot."). Plaintiff replied on January 2, 2019. ECF No. 40 ("Reply").

## II. LEGAL STANDARD

### A. Standard of Review

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017); *Morgan v. Cmm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Morgan*, 169 F.3d at 599. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins*, 466 F.3d at 882).

### B. Standard for Determining Disability

An individual is considered disabled for the purposes of Title II and Title XVI of the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The physical or mental impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

4

exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

"ALJs are to apply a five-step sequential review process in determining whether a claimant qualifies as disabled." *Bray v. Cmm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. If not, the analysis proceeds to step two. At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If not, the claimant is not disabled. If so, the analysis proceeds to step three. At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or equals an impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is disabled. If not, the analysis proceeds to step four. At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. If not, the analysis proceeds to step five. At step five, the ALJ determines whether the claimant can perform other jobs in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

"The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray*, 554 F.3d at 1222. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

## III. DISCUSSION

Plaintiff asserts that the ALJ committed three errors. First, Plaintiff argues that the ALJ improperly rejected the opinion of Plaintiff's treating physician. Plaintiff Mot. at 2, 10–13. Second, Plaintiff contends that the ALJ erred by improperly rejecting Plaintiff's testimony. *Id.* at 2, 13–15. Finally, Plaintiff asserts that the ALJ's step-five finding is not supported by substantial

5

evidence. *Id.* at 2, 15–16. The Court first summarizes the relevant evidence and the ALJ's opinion, and then the Court assesses whether the ALJ erred.

### A. Relevant Evidence

### 1. Relevant Medical Evidence

#### a. Medical History

Plaintiff suffers from a variety of health issues. Plaintiff was diagnosed with acute lymphocytic leukemia in December 2002. AR 353; AR 355–57. On June 27, 2003, an MRI of Plaintiff's lumbar spine revealed a heterogenous mass suspicious for involvement with leukemia, in addition to post inflammatory changes at L3, most likely due to a previous lumbar puncture. AR 364. On July 21, 2003, an MRI of Plaintiff's brain revealed a lack of signal bilaterally in the Meckel's cave area, which the physician determined may represent neoplastic involvement. AR 455–56. On July 23, 2003, Plaintiff had a bone marrow transplant. AR 351; AR 355–57.

Plaintiff noted double vision while undergoing chemotherapy. AR 514. On September 30, 2003, an eye examination revealed retinal hemorrhages in both of Plaintiff's eyes, likely due to his "hemologic condition with the bone marrow transplant and leukemia." AR 514. In addition, the assessment noted retinal pigment epithelial changes, which could represent a pigmented variation of lattice degeneration as well as sixth cranial palsy on the left side, which had not improved in five months. AR 515. Plaintiff was referred for an appointment to discuss the possibility of surgical correction for the double vision. AR 515.

On January 4, 2010, Plaintiff underwent an infectious disease consultation. AR 575–77. Notes from that consultation indicate that Plaintiff had been exposed to tuberculosis in the past but had no sign of active infection, although Plaintiff appeared to have underlying lung disease. AR 576–77. On July 7, 2010, Plaintiff reported having dizzy spells a few times. AR 623. On July 30, 2010, an MRI of Plaintiff's brain revealed multifocal scattered punctate areas of white matter signal abnormality in the centrum semiovale and within the periventricular white matter bilaterally, that was thought to be related to Plaintiff's prior cancer treatment. AR 654–55. On

United States District Court
Northern District of California

August 15, 2010, Plaintiff was treated for asthma and allergies. AR 781.

On February 8, 2011, Plaintiff was treated for lumbar radiculopathy and muscle spasm of the back. AR 669. The physician advised Plaintiff to alternate warm and cold compresses, do daily back exercises as well as to take ibuprofen and cyclobenzaprine. AR 669–70. On March 16, 2011, Plaintiff saw a doctor for lower back pain that radiated into his legs. AR 836. On March 16, 2011, an x-ray on Plaintiff's lumbar spine showed degenerative disc disease and evidence of a transitional vertebral body at L5-S1 with incomplete fusion of the spinous process. AR 349.

On April 15, 2011, Plaintiff saw the doctor regarding his asthma and allergies. AR 861. The doctor noted that Plaintiff had not been using his preventative asthma inhaler everyday but that instead he takes it on an "as needed basis." AR 861. The doctor noted that she explained the importance of taking the inhaler regularly every day to control his asthma symptoms. AR 861.

On August 10, 2011, Plaintiff was treated for another flare up of his off and on back pain. AR 867. On August 22, 2011, Plaintiff was again treated for his asthma and allergy issues. AR 678–79.

On March 6, 2013, Kaiser's medical records indicate that Plaintiff was treated for worsening vertigo. AR 910. Plaintiff had an MRI of his brain taken on March 20, 2013. AR 930–31. The MRI showed stable, mild posttreatment and/or chronic small vessel ischemic changes. AR 931.

On January 16, 2014, Plaintiff was again treated for a flare up of his chronic low back pain. AR 993. On January 20, 2014, Plaintiff had a physical therapy evaluation for his lower back pain. AR 1129–30. Notes from the evaluation indicate that Plaintiff exhibited "[s]igns/symptoms of low back pain with lower extremity radicular symptoms, decreased sitting tolerance, decreased ambulation tolerance, decreased range of motion, interrupted sleep pattern consistent with" the diagnosis. AR 1130. The assessment recommended physical therapy. AR 1130.

On August 7, 2014, Plaintiff went to Kaiser for a routine follow up and again complained of back pain as well as fatigue. AR 10661–62. The back pain was different from Plaintiff's low

United States District Court
Northern District of California

back pain as it was on the right side of his mid-back. AR 1061. The doctor noted that there were palpable muscle spasms in Plaintiff's back. AR 1062.

### b. Treating Physician Dr. John Cheng Yang Pan

Plaintiff's brief discusses treatment from Dr. John Cheng Yang Pan beginning in August of 2014. On August 26, 2014, Dr. Pan examined Plaintiff and noted Plaintiff's history of lymphoid leukemia with optic nerve involvement, sixth cranial nerve palsy, and a bone marrow transplant with residual lower extremity numbness following radiation treatment. AR 1074. Dr. Pan's notes explained that Plaintiff had done one session of physical therapy for his lower back in 2011 and that a chiropractor "did not help." AR 1075. In Dr. Pan's notes from the physical examination, Dr. Pan noted mild tenderness across Plaintiff's lumbosacral junction, lower lumbar paraspinal, and bilateral sacroiliac joint areas. AR 1076. Dr. Pan's clinical impression noted that Plaintiff's "pain appears myofascial, may have component of bilateral sacroiliac joint that causes referral pain to posterior thighs (but not to calves)," in addition to chronic bilateral lower extremity numbness because of Plaintiff's previous cancer treatment. AR 1077. Dr. Pan ordered further diagnostic testing and an MRI of Plaintiff's lumbar spine. AR 1077.

Plaintiff underwent an MRI of his lumbar spine on September 8, 2014. AR 348. The MRI revealed "[e]pidural lipomatosis[,] [m]inimal symmetric disc bulge[,] [m]ild bilateral facet arthropathy[,] [m]ild spinal canal stenosis[,] [m]oderate bilateral neural foraminal stenoses" at L4-L5. AR 348. Dr. Pan sent Plaintiff the MRI report and noted that "[t]he significant finding is a tear injury in the L5-S1 disk known as annular tear. This is a part of spinal degeneration. In the acute phase, annular tear can cause back pain, and to a smaller extent[,] may cause nerve inflation and leg pain as well." AR 348. Dr. Pan also reviewed the MRI result's and noted in the Kaiser records that Plaintiff may have chronic pain syndrome. AR 1090–91.

On November 7, 2014, Plaintiff was again examined by Dr. Pan. AR 1323–24. Dr. Pan noted that Plaintiff "states his [lower] back pain is about the same, worse with colder weather." AR 1323. Dr. Plan's clinical impression indicated that Plaintiff may have chronic pain syndrome

8

and "myofascial component, but likely more central pain than what could be explained structurally." AR 1325. Dr. Pan also noted that the "L5-S1 annular tear may contribute to short term pain, but does not explain chronicity and severity of pain." AR 1325. In addition, Dr. Pan's notes from the physical examination noted inconsistencies in Plaintiff's testing. AR 1324. For instance, Dr. Pan wrote:

> Diffusely give-away weakness on manual testing of all tested muscle groups in bilateral lower extremities and bilateral lower extremities. Does not appear to be just due to pain. Amount of weakness not very consistent on repeated testing. When in standing posture and patient was asked to actively extend toes and dorsiflex ankles, the amount of active strength appears stronger than on isolated manual testing.

AR 1324. Additionally, Dr. Pan noted that "all manual muscle testing results appear weaker than previous exam on 8/26/2014 (when disability was not specifically discussed or addressed in that encounter)." AR 1324. Dr. Pan also wrote that Plaintiff has a "non consistent gait" and that Plaintiff "[a]ppears to be out of balance at times and unable to support weight at times but no actual leaning or falling." AR 1324. "When distracted, balance appears to be improved, especially during transitional movements such as sit-stand, or supine-stand. When patient is aware that certain activity is being tested, such as when asked to 'just walk', the seemly [sic] difficulty would appear to be exaggerated." AR 1324.

Dr. Pan also discussed work options with Plaintiff. Dr. Pan's notes reflected that:

> Patient is adamant that he cannot work because of his lymphoid leukemia (ALL) and related treatments. Stated he gets tired easily and would not be able to lift. He requests that I fill out paperwork for him to apply for "General assistance program" from social services agency of Santa Clara County. I filled it out to my best judgement [sic].
>
> I informed patient that while there may be neurological changes after his ALL treatments that make it not-suitable for him to do work that requires physical exertion or heavy lifting, I think he is able to do other types of work. I encouraged him to think in terms of rehabilitation and not focusing on disability or what he cannot do.

AR 1325.

Dr. Pan completed the general assistance program medical form that Plaintiff requested on November 7, 2014. AR 347. For the question "[i]n your opinion, does this patient have a physical

9

United States District Court
Northern District of California

or mental disorder which limits his or employability," Dr. Pan marked "yes." AR 347. Dr. Pan wrote that the following diagnoses contribute to the patient's disability: "chronic pain syndrome, possible radiation induced neuropathy." AR 347. Dr. Pan also noted that Plaintiff had a history of "lymphoid leukemia (ALL) with 6th cranial nerve palsy" and a bone marrow transplant. AR 347. Dr. Pan cited the "lumbar spine MRI" and the "physical exam" as "objective evidence of the above limitations." AR 347. In response to the question "[i]n your opinion do you feel that your patient is permanently disabled/unable to work," Dr. Pan marked "no." AR 347. In response to the question "[a]re you in support of your patient pursuing an SSI disability claim," Dr. Pan marked "no." AR 347.

Dr. Pan met with Plaintiff again on December 4, 2014. AR 1356–57. During the encounter, Dr. Pan examined Plaintiff and reviewed a letter from the Social Security Administration denying benefits. AR 1356. Dr. Pan wrote:

> I informed patient that I agree with the assessment and reasoning giv[en] in the SSA denial letter. Informed patient that I do not have new medical information or finding that could support an appeal. Discussed again that while there may be neurological changes after his ALL treatment that make it not-suitable for him to do work that requires physical exertion or heavy lifting, I think he is able to do other types of work. I encouraged him to think in terms of rehabilitation and not focusing on disability or what he cannot do.

AR 1357–58. Dr. Pan then made a referral to the Pain Management Rehabilitation Program. AR 1358.

On December 4, 2014, Dr. Pan also authored a letter that stated its purpose was to verify that Plaintiff had the diagnoses of "chronic pain syndrome, lumbar spine degeneration, probable radiation induced neuropathy, and medical history of leukemia with cranial nerve involvement, status post bone marrow transplant." AR 343. Dr. Pan also wrote that "[t]he diagnosis of lumbar spine degeneration is based on MRI done on 9/2/2014 and X[-]ray on 3/14/2011. He also received MRI of brain on 7/30/2010." AR 343.

Dr. Pan treated Plaintiff on May 6, 2015, for increased right side back pain after Plaintiff fell off his bed. AR 1416. Dr. Pan referred Plaintiff to acupuncture and a physical therapy

10

evaluation. AR 1418; AR 1432. On May 8, 2015, Plaintiff received acupuncture treatment for his low back pain. AR 1423. Plaintiff underwent his physical therapy evaluation on May 20, 2015, and Plaintiff was given some exercises to address his pain and mobilization issues. AR 1432–34.

Dr. Pan examined Plaintiff again on August 26, 2015. AR 1504. Dr. Pan's encounter notes state that "Patient reports symptoms to be unchanged, back pain, right more than left lower extremity pain, fatigue, memory problem." AR 1504. Dr. Pan's notes from the physical examination indicate "[d]iffusely give-away weakness on manual testing of all tested muscle groups in bilateral upper and lower extremities," but that it "[d]oes not appear to be just due to pain." AR 1504–05. Plaintiff "[a]ppears limited by effort, overall unchanged from previous exam." AR 1505.

As for Plaintiff's gait, Dr. Pan noted that it was "unchanged from previous exam" and not consistent. AR 1505. Dr. Pan continued:

> Appears to have more significant impairment when patient is aware that certain activity is being tested. Balance appears impaired when asked to walk. Unable to do single-leg stance. However, when focus was on other tasks (lumbar flexion), he was able to maintain single leg stance with reasonable balance for at least a few seconds

AR 1505. As for treatment, Dr. Pan discussed Plaintiff's physical therapy session in 2015 and that Plaintiff does home exercises for his back. AR 1505. Dr. Pan noted that Plaintiff had one acupuncture session in May 2015, but that Plaintiff was a no show to the follow-up appointment. AR 1506. Dr. Pan also wrote that Plaintiff had received a referral to the Pain Management Rehabilitation Program, but that Plaintiff did not follow-up. AR 1506.

As for work, Dr. Pan noted that Plaintiff asked for Dr. Pan to complete the "Physician's Medical Source Statement" paperwork for Plaintiff's application for social security disability benefits. AR 1506; AR 1292–94. Dr. Pan completed the Physician's Medical Source Statement for Plaintiff as follows. Under the "diagnoses" question, Dr. Pan wrote "chronic pain syndrome, possible radiation induced neuropathy[,] history of lymphoid leukemia (ALL) with cranial nerve 6th palsy, [and] status post bone marrow transplant (2003)." AR 1292. Under the "symptoms"

United States District Court
Northern District of California

question, Dr. Pan wrote that Plaintiff suffered from back pain and lower extremity pain, fatigue, depressed mood, and memory problems. AR 1292. As for the "clinical findings and objective signs," Dr. Pan wrote "diffuse give-away weakness on manual muscle testing" and "decreased balance." AR 1292. Dr. Pan did not answer the question asking whether the patient is a malingerer. AR 1292. Dr. Pan then opined that Plaintiff's symptoms were "occasionally" (defined as between 6% to 33% of an 8-hour workday) severe enough to interfere with the attention and concentration needed to perform even simple work tasks. AR 1292.

On the next page, Dr. Pan opined that Plaintiff could walk 3-4 city blocks without rest or severe pain, sit for 20 minutes at a time, and stand for 15 minutes at a time. AR 1293. Dr. Pan marked that Plaintiff could sit for 8 hours in a day and stand or walk for less than 1 hour each in an 8-hour day. AR 1293. Dr. Pan answered "yes" to the question asking whether the "patient needed a job that permits shifting positions at will from sitting, standing or walking." AR 1293. Dr. Pan also wrote that Plaintiff would need to take unscheduled breaks approximately every 30 minutes and would need to rest for 5 minutes before returning to work. AR 1293. Dr. Pan wrote that Plaintiff could occasionally lift less than 10 pounds and should rarely (defined as between 1% to 5% of an 8-hour workday) lift anything up to 10 pounds. AR 1293. Dr. Pan wrote that Plaintiff's limitations first started around 2003 but worsened significantly in 2011. AR 1293.

On December 29, 2016, Dr. Pan again treated Plaintiff for back pain. Dr. Pan noted that on the physical examination, Plaintiff's gait was unchanged from before. AR 1536.

### 2. Hearing Testimony

#### a. Medical Expert Testimony

Dr. Irvin Belzer testified as the impartial medical expert at the February 23, 2016 hearing before the ALJ. AR 32; AR 62–72. Dr. Belzer first summarized Plaintiff's reported symptoms and medical history. AR 63–65. In this conversation, Dr. Belzer noted that Plaintiff "does have chronic low back pain but without any specific anatomic findings and without any significant functional problems that would limit his days or his postural activities." AR 64–65. Dr. Belzer testified that

Plaintiff's residual functional capacity would include the ability to lift up to 50 pounds occasionally; sit for 6 hours in an 8-hour workday, but not more than 2 hours at any time without standing to stretch; stand and walk for up to 6 hours in an 8-hour workday, but not more than 2 hours without a few minutes of rest; reach, handle, or push/pull with either hand without restriction; and use feet controls only occasionally because of low back problems. AR 66–67. Dr. Belzer further testified that Plaintiff could climb stairs and ramps frequently but should not climb ladders and scaffolds because of Plaintiff's nerve palsy. AR 66, 68. Dr. Belzer also testified that "balancing, stopping, kneeling, crouching, and crawling [sh]ould be limited to occasional because of the low back problems," and that Plaintiff should not be around unprotected heights or moving mechanical parts. AR 66. Nor should Plaintiff operate a commercial motor vehicle. AR 66. Dr. Belzer also noted that Plaintiff should have no more than occasional exposure to extreme temperatures and vibrations; however, Plaintiff had no restrictions to noise with proper equipment. AR 69. Dr. Belzer explained that when he assessed Plaintiff's limitations, he did not take into account Plaintiff's pain, but rather was making an assessment from a "functional standpoint." AR 70. Dr. Belzer acknowledged that if pain were taken into consideration, Plaintiff could be more limited than Dr. Belzer testified. AR 70. When Plaintiff's attorney directed Dr. Belzer to the medications that Plaintiff was taking, including cyclobenzaprine and baclofen, Dr. Belzer testified that those medications could cause drowsiness. AR 72.

### b. Plaintiff's Testimony

Plaintiff also testified at the February 23, 2016 hearing before the ALJ. *See* AR 73–92. Plaintiff explained that he often needs to rest during the day due to his low back pain. AR 83. Given his low back pain, Plaintiff estimated that he could stand for 50 to 20 minutes at a time before he would need to sit down or take a break. AR 84–85. Plaintiff also explained that he uses a cane most of the time when he walks. AR 85. Plaintiff estimated he could safely lift and carry 10 to 15 pounds. AR 85–86. Because his medication causes drowsiness, Plaintiff explained that he takes approximately 2 naps per day. AR 86. As for the pain he feels, Plaintiff explained that the

13

pain is a sharp pain in his low back that radiates into both of his legs as well as some numbness. AR 87–88. When asked to rate his pain from 0 to 10, Plaintiff states the pain was a 9, but that the level is reduced with medication. AR 88. Plaintiff further testified that he has poor memory and difficulty with concentration. AR 89. Plaintiff testified that he uses a chairlift at home to get up the stairs. AR 92.

### c. Vocational Expert Testimony

Ronald Morrell testified as the vocational expert ("VE") at the February 23, 2016 hearing. AR 92–103. The ALJ asked multiple hypotheticals regarding a person who has the same age, education, and prior work experience as the Plaintiff. AR 96. The ALJ asked the VE to consider an individual limited to light exertion, who could not use foot controls more than occasionally; was able to sit up to 6 hours total in an 8-hour workday, but no more than 2 hours without interruption; could stand or walk for up to 6 hours in an 8-hour workday, but no more than 2 hours in a row; was also limited to no more than frequent climbing of stairs and ramps, and could never climb ladders, ropes or scaffolds, but could occasionally stoop, kneel, balance, crouch, or crawl; could never work at unprotected heights or with moving machinery or motor vehicles; was limited to occasional exposure to extreme temperatures, vibrations, or pulmonary irritants; and had no limitation to loud noise if using appropriate ear protection. AR 97–98. In response, the VE identified the occupations of parking lot attendant (DOT # 915.473-010), self-service gas station attendant (primarily a cashier) (DOT # 211.462-010), and small product assembly jobs (DOT #s 739.687-030, 706.684-022, 706.687-010). AR 98–99. The VE further testified that the three identified light jobs would be suitable for someone limited to standing and walking for 4 hours in an 8-hour workday. AR 99; AR 101. The VE also testified that the above identified jobs would not be available to someone limited to sedentary work—that is, someone limited to standing and walking no more than 2 hours in an 8-hour workday, sitting up to 6 hours, and lifting no more than 10 pounds. AR 102. The VE testified that there is also no work available for a person who could not concentrate for more than 15 to 20 percent of an 8-hour workday due to the side effects of

14

medication such as drowsiness, as well as fatigue and pain. AR 102–03.

**B.  The ALJ's Decision**

The ALJ filed a written decision denying Plaintiff's claims on June 29, 2016. AR 27–38. The ALJ applied the five-step evaluation process for determining disability described in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 1, 2010, the alleged onset date. AR 29–30. At step two, the ALJ found that Plaintiff had a remote history of acute lymphocytic leukemia with residual sixth cranial nerve palsy and peripheral neuropathy; chronic pain syndrome with a history of low back and lumbar degenerative disc disease; and intermittent acute asthma with history of tuberculosis exposure without activity infection; and that those impairments are severe. AR 30. At step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 30–31.

Before moving on to step four, the ALJ assigned the following RFC, which accounted for Plaintiff's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he cannot perform foot control actions more than occasionally, can sit 6 hours of an 8-hour workday but no more than 2 hours without interruption, can stand and/or walk 6 hours of an 8-hour workday, but no more than 2 hour continuously without interruption. He can do no more than frequent climbing of stairs[,] [and] ramps and no climbing of ladders, ropes, [and] scaffolds. He can occasionally do other postural movements, such as stooping, kneeling, balancing, crouching, crawling, but he must avoid exposure to unprotected heights, nearby moving machinery, or operation of motor vehicles on the job. He can tolerate occasional exposure to extreme cold, heat and vibrations or pulmonary irritants and has no limitations for exposure to loud noise if he has appropriate ear protection.

AR 31–32. In coming to this RFC, the ALJ summarized and weighed the medical evidence and Plaintiff's subjective symptom testimony. AR 32–35.

The ALJ assigned the greatest weight to Dr. Belzer's opinion as to functional capacity. AR 33. The ALJ noted that Dr. Belzer "found a range of medium that the undersigned limits further to

15

light exertion as an interpretation of the record in the light most favorable to the claimant given his extensive treatment history, the claimant's prescription history, imaging studies and his statements and testimony." AR 33.

The ALJ found that Plaintiff's statements concerning "the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 33. For instance, the ALJ found that although Plaintiff was diagnosed with acute lymphocytic leukemia and had a bone marrow transplant in December 2002, the ALJ found that the record showed that Plaintiff had been in remission since 2003. AR 33. Moreover, although Plaintiff was noted to have cranial nerve sixth palsy on the left side, unimproved for five months beginning in September 2003, imaging and lumbar puncture studies and bone marrow aspirate and biopsy in 2003 did not reveal evidence of palsy. AR 33 (citing AR 355). As for Plaintiff's asthma, the ALJ found that Plaintiff's symptoms were intermittent but controlled. AR 33–34.

The ALJ next discussed Plaintiff's back pain. The ALJ noted Plaintiff had give-away weakness and noted that Plaintiff failed to pursue the recommended pain management treatment. AR 34–35. The ALJ gave little weight to Dr. Pan's opinion because Dr. Pan's "treatment notes clearly contradict his medical source statement." AR 34. Specifically, the ALJ wrote that Dr. Pan "noted that the claimant was limited by effort and that [claimant's] gait was inconsistent depending on whether it was being tested." AR 34. Further, "the only clinical findings and objective signs Dr. Pan cited when supporting his opinion was the diffuse give-away weakness on manual muscle testing and decreased balance." AR 34. "Treatment notes indicated that while the claimant's L5-S1 annual tear may contribute to short term pain, it does not explain the chronicity and severity of the pain reported by the claimant." AR 34. "Furthermore, Dr. Pan noted the claimant's imaging studies were not consistent with his reported subjective complaints." AR 35. The ALJ explained that Dr. Pan's opinion on the form for benefits indicated that the Plaintiff's impairments limited his employability, but that Dr. Pan's conclusion was not inconsistent with the

residual functional capacity found by the ALJ. AR 35.

In closing, the ALJ also noted that the Plaintiff's assertions were weakened to the extent to which Plaintiff's assertions of impairment-related symptoms were inconsistent with other evidence in the record, as noted through Dr. Pan's examination. AR 35.

At step four, the ALJ found Plaintiff unable to perform any past relevant work. AR 36. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 36–37. Relying on the VE testimony and the dictionary of Occupational Titles ("DOT"), the ALJ found that Plaintiff was capable of performing the occupations of parking lot attendant (DOR # 915.473-010), self-service gas station attendant (DOT # 211.462-010), and light small product assembly (DOT #s 739.687-030, 706.684-022, 706.687-010). AR 37. Because the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that Plaintiff is not disabled. AR 37.

### C. Analysis

As stated above, Plaintiff argues that the ALJ committed three errors. The Court addresses these asserted errors in turn.

### 1. The ALJ Did Not Err in Discounting Treating Physician Dr. Pan's Opinion

First, Plaintiff argues that the ALJ erred by misweighing the opinion of Plaintiff's treating physician, Dr. Pan. Plaintiff Mot. at 10–13. "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Cmm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). To reject a treating or

United States District Court
Northern District of California

examining physician's contradicted opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216). Even when a treating physician's opinion is contradicted, and thus not entitled to controlling weight, "in many cases" it will still "be entitled to the greatest weight and should be adopted." *Orn*, 495 F.3d at 631 (quoting SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). Here, Dr. Pan's opinion is contradicted by Dr. Belzer's opinion and by Dr. Pan's own medical notes. Therefore, the "specific and legitimate reasons that are supported by substantial evidence" standard applies. *See Ryan*, 528 F.3d at 1198.

Dr. Pan opined in his medical source statement that Plaintiff would be incapable of sustaining work activity. AR 1292–94. More specifically, Dr. Pan stated that Plaintiff's pain symptoms would interfere with his ability to perform even simple work tasks up to one-third of the workday, that Plaintiff could stand or walk less than one hour during an 8-hour workday, and that Plaintiff would need a 5-minute unscheduled break every half hour of work. AR 1292–93. The ALJ evaluated Dr. Pan's opinion and afforded little weight to Dr. Pan's opinion because, among other reasons, Dr. Pan's opinion is "inconsistent with the medical evidence of record, including his own treatment notes," and that Dr. Pan's "treatment notes clearly contradict his medical source statement." AR 34.

The Court finds that the ALJ did not err by discounting the opinion of Dr. Pan. "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." *Batson v. Cmm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (internal citations omitted). Similarly, "[a] conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim*, 763 F.3d at 1161.

Here, Dr. Pan's notes were in conflict with his medical source statement, and this was one reason the ALJ specifically gave for discounting the opinion of Dr. Pan. AR 34–35 (ALJ articulating that Dr. Pan's "treatment notes clearly contradict his medical source statement"). For

18

instance, Dr. Pan's treatment notes reflect that when Plaintiff brought the agency's initial denial of benefits letter to Dr. Pan, Dr. Pan stated that he "agree[d] with the assessment and reasoning giv[en] in the SSA denial letter" and informed Plaintiff that he did "not have new medical information or finding[s] that could support an appeal." AR 1357–58. Dr. Pan encouraged Plaintiff "to think in terms of rehabilitation and not focus[ ] on disability or what he cannot do." AR 1358. Dr. Pan also noted that Plaintiff never followed up on the pain management program referral. AR 1358. Dr. Pan commented that Plaintiff's alleged pain was greater "than what could be explained structurally," and that the L5-S1 annular tear may have contributed to short term pain, but that "does not explain chronicity and severity of pain." AR 1357. Dr. Pan also noted that "while there may be neurological changes after [Plaintiff's] ALL treatment that make it not-suitable for him to do work that requires physical exertion or heavy lifting, I think he is able to do other types of work." AR 1357–58.

Moreover, Dr. Pan's treatment notes indicate that Dr. Pan observed unreliable testing behavior by Plaintiff, and this was also addressed by the ALJ. AR 34 ("[Dr. Pan] noted that the claimant was limited by effort and that his gait was inconsistent depending on whether it was being tested."). For instance, Dr. Pan's notes from May 2015 reflect that Plaintiff had "give-away weakness," that "[d]oes not appear to be just due to pain," and is likely "limited by effort." AR 1417. Further, Dr. Pan had remarked that Plaintiff's gait was inconsistent and that "when patient is aware that certain activity is being tested, . . . balance appears slightly worse." AR 1417. Dr. Pan's notes from August 26, 2015—the same date that Dr. Pan filled out the medical source statement— again noted the give-away weakness that was limited by Plaintiff's lack of effort and "unchanged from previous exam." AR 1504–05. Dr. Pan noted that Plaintiff again "[a]ppear[ed] to have more significant impairment when [he] [wa]s aware that certain activity [wa]s being tested." AR 1505.

Despite noting the inconsistencies in Plaintiff's testing, Dr. Pan agreed to complete the medical source statement when asked by Plaintiff. AR 1506. In that August 26, 2015 opinion form, Dr. Pan opined that Plaintiff's symptoms worsened in 2011, AR 1294, despite having

19

concluded only nine months prior (in December 2014), that he agreed with the social security denial letter and that Plaintiff could do lighter work not involving heavy lifting. AR 1357–58. Dr. Pan's notes do not include any explanation for the change of opinion. The Court also agrees with the Commissioner that it is notable that Dr. Pan did not answer the question on the medical source statement asking whether Plaintiff was a malingerer. AR 1292.

In sum, the ALJ's conclusion that Dr. Pan's opinion was contradicted by his treatment notes was a specific and legitimate reason supported by substantial evidence. *See Ryan*, 528 F.3d at 1198; *see also Valentine v. Cmm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (finding ALJ met standard to provide "specific and legitimate reasons that are supported by substantial evidence in the record," where the ALJ identified a contradiction in the treating psychologist's opinion); *Schuff v. Astrue*, 327 F. App'x 756, 758 (9th Cir. 2009) ("The ALJ gave specific and legitimate reasons supported by substantial evidence for rejecting the opinions of treating physicians . . . because their records did not support their opinions and were inconsistent with substantial evidence in the record."). Further, per *Bayliss*, if there is more than one rational interpretation of the evidence, the Court must defer to the ALJ. 427 F.3d at 1214 n.1. As such, the Court finds the ALJ did not err by discounting Dr. Pan's opinion.

### 2. ALJ Did Not Err in Discounting Plaintiff's Testimony

Next, Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective symptom testimony. Plaintiff Mot. at 13–15. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). At the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* At the second step, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (quoting *Smolen v. Charter*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "This is not an easy requirement to meet: 'The clear

Case No. 17-CV-06695-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

and convincing standard is the most demanding required in Social Security cases.'" *Id.* at 1015

(quoting *Moore v. Cmm'r of Soc. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

"[B]ecause the claimant's subjective statements may tell of greater limitations than can medical evidence alone," "the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001); *see also Robbins*, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989) ("That a claimant testifies that his symptom is more disabling than would normally be expected gives no valid reason to discount his testimony."). Thus, the fact that objective medical evidence does not support the full extent of a claimant's alleged symptoms is not a clear and convincing reason to discount the claimant's testimony. However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Cmm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

In the instant case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reason explained in this decision." AR 33. Specifically, the ALJ wrote that although Plaintiff was diagnosed with acute lymphocytic leukemia and had a bone marrow transplant in December 2002, the record shows that Plaintiff had been in remission since 2003. AR 33. Moreover, although Plaintiff was noted to have cranial nerve sixth palsy on the left side, unimproved for five months beginning in September 2003, imaging and lumbar puncture studies and bone marrow aspirate and biopsy in 2003 did not reveal evidence of palsy. AR 33 (citing AR 355). As for Plaintiff's asthma, the ALJ found that Plaintiff's symptoms were intermittent but controlled. AR 33–34. Further, the ALJ wrote that "[s]upport for the claimant's assertions is weakened by the extent to which his

assertions of impairment-related symptoms are inconsistent with the other evidence in the record as noted by Dr. Pan's examination of the claimant, which revealed the claimant's give-away weakness, poor effect on motor strength testing, inconsistent gait and failure to pursue pain management." AR 35.

Because the ALJ frames the pain severity issues as whether Plaintiff's claims are supported by the objective evidence or the record, the rule from *Tonapetyan*, *Robbins*, and *Swenson* would appear to govern. Under this rule, the ALJ would have erred if the only reason he offered for discrediting Plaintiff's testimony is that the objective medical evidence does not support the full extent of Plaintiff's claimed symptoms. However, the ALJ's reasoning also highlights inconsistencies between Plaintiff's claimed symptoms and other evidence in the medical record, which would constitute a sufficient basis for rejecting the claimant's subjective testimony. *See Carmickle*, 533 F.3d at 161.

For example, the record indicates several inconsistencies between Plaintiff's testing in the medical records and Plaintiff's intensity testimony. Dr. Pan's medical notes observed Plaintiff exhibiting "give-away weakness" that Dr. Pan concluded "does not appear to be just due to pain" and was "limited by effort." AR 1417. Similarly, Plaintiff appears "to have more significant impairment when patient is aware that certain activity is being tested." AR 1505. While Plaintiff was "[u]nable to do single-leg stance," when Plaintiff's focus was on other tasks, "he was able to maintain single leg stance with reasonable balance for at least a few seconds." AR 1505. Such inconsistencies between the testing medical records and Plaintiff's intensity raise doubt about the integrity of Plaintiff's intensity testimony. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) ("Saelee's conduct also raised doubts about the integrity of her complaints; in one instance, she was able to move about a doctor's office at ease despite claiming to be blind and, in another, she left a doctor's examination room limping heavily although she had no noticeable limp when she entered the room."). Moreover, under *Carmickle*, such inconsistencies constitute a clear and convincing reason to discredit Plaintiff's subjective symptom testimony. 533 F.3d at 1161.

1    Further, Plaintiff's intensity testimony is also weakened by Plaintiff's repeated refusal to

2    engage in treatment options. Dr. Pan's medical notes reflect that Plaintiff "appears to be focused

3    on disability rather than pain management." AR 1358. For example, although Plaintiff was

4    referred to pain management, he did not follow-up. AR 1358. Similarly, Plaintiff had one

5    acupuncture session but was a no show to the follow-up. AR 1506. The ALJ was permitted to

6    consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed

7    course of treatment," in weighing Plaintiff's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035,

8    1039 (9th Cir. 2008); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[T]he

9    individual's statements may be less credible if the level of complaints, or if the medical reports or

10   records show that the individual is not following the treatment as prescribed and there are no good

11   reasons for this failure.").

12   Moreover, the ALJ may consider the Plaintiff's positive response to conservative treatment

13   to find that that such evidence undermines Plaintiff's testimony regarding the disabling nature of

14   his pain. *See Tommasetti*, 533 F.3d at 1040 ("The record reflects that Tommasetti responded

15   favorably to conservative treatment including physical therapy and the use of anti-inflammatory

16   medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a

17   response to conservative treatment undermines Tommasetti's reports regarding the disabling

18   nature of his pain."). Here, the record reflects that after receiving one acupuncture session,

19   Plaintiff reported a subjective pain level of only 2/10 and the treatment resulted in "positive

20   benefit." AR 1433 (medical notes); AR 34 (ALJ's opinion discussing acupuncture treatment).

21   Such evidence further indicates that Plaintiff's pain was not all-disabling and could be managed.

22   *See, e.g.*, *Ware v. Cmm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments

23   that can be controlled effectively with medication are not disabling for the purposes of

24   determining eligibility for SSI benefits."). Plaintiff's citation to *Nguyen v. Chater*, is inapposite

25   and does not affect the Court's analysis because in that case the claimant had failed to seek out

26   treatment for his mental condition and the ALJ cited that as a reason for rejecting the claimant's

27

28
     Case No. 17-CV-06695-LHK
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
     CROSS-MOTION FOR SUMMARY JUDGMENT

1    assertions about his depression. 100 F.3d 1462, 1465 (9th Cir. 1996). By contrast, in the instant

2    case, the ALJ was focused on Plaintiff's failure to seek out further treatment related to his low

3    back pain.

4         In sum, the ALJ offered clear and convincing reasons for discounting Plaintiff's testimony

5    and those reasons are supported by substantial evidence in the record. Further, per *Bayliss*, "[i]f

6    the record would support more than one rational interpretation, we defer to the ALJ's decision."

7    427 F.3d at 1214 n.1. Accordingly, the Court will not disturb the ALJ's adverse credibility

8    finding.

9    **3.   ALJ Did Not Err in Step Five Finding**

10        Finally, Plaintiff argues that the ALJ erred at step five when the ALJ determined that

11   Plaintiff could perform the occupations of parking lot attendant, self-service gas station attendant,

12   and light small product assembly because the "light jobs are improper for someone limited to a

13   reduced range of sedentary work, as [Plaintiff's] testimony and the opinion of treating physician

14   Dr. Pan establish." Plaintiff Mot. at 15. This argument is derivative of Plaintiff's arguments above

15   and so the Court rejects this argument for the same reasons given above.

16        Plaintiff also complains that the hypothetical posed to the VE was inadequate as it failed to

17   mention "[Plaintiff's] credible allegations and the limitations assessed by treating physician Dr.

18   Pan." Plaintiff Mot. at 16. Plaintiff further argues that "[b]ecause the VE testimony that [Plaintiff]

19   could perform the occupations identified by the ALJ was based on the ALJ's failure accurately to

20   pose all of [Plaintiff's] limitations, the VE's testimony that [Plaintiff] can perform those

21   occupations has no evidentiary value." *Id.* at 16.

22        However, an ALJ need not include every proposed limitation in a hypothetical posed to a

23   VE. *Copeland v. Bowen*, 861 F.2d 536, 540–41 (9th Cir. 1988). "Rather, the ALJ is 'free to accept

24   or reject these restrictions . . . as long as they are supported by substantial evidence.'" *Magallanes*

25   *v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (quoting *Martinez v. Heckler*, 807 F.2d 771, 774

26   (9th Cir. 1986)). As discussed above, the ALJ afforded little weight to Dr. Pan's opinion because

27

28

Case No. 17-CV-06695-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

it conflicted with Dr. Pan's own medical notes. Further, the ALJ was permitted to discount Plaintiff's assertions because the ALJ properly found that Plaintiff's "assertions of impairment-related symptoms are inconsistent with the other evidence in the record as noted by Dr. Pan's examination of the claimant, which revealed the claimant's give-away weakness, poor effect on motor strength testing, inconsistent gait and failure to pursue pain management." AR 35. Plaintiff's citation to *Embrey v. Bowen* is inapposite because in that case, the ALJ did not provide specific and legitimate reasons for disbelieving the claimant's testimony as to the claimant's subjective limitations, and therefore the claimant's limitations were required to be included in the vocational expert's hypothetical. 849 F.2d 418, 423 (9th Cir. 1988). As already discussed above, in the instant case, the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony.

Thus, the ALJ's hypothetical to the VE was not inadequate as it properly included all limitations that the ALJ found to be supported by substantial evidence. *See, e.g.*, *Stubbs-Danielson v. Astrue*, 538 F.3d 1169, 1175–76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, Stubbs-Danielson simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not.").

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: January 22, 2019

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

Case No. 17-CV-06695-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT